United States District Court
Southern District of Texas

**ENTERED**

June 14, 2019

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **MIGUEL TOLEDO-VILLANUEVA** | § | |
| **TN: TEODORO ROMERO TORRES** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:19-CV-43** |
| | § | **CRIMINAL ACTION NO. 5:17-CR-799-2** |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Respondent.** | § | |

### REPORT AND RECOMMENDATION

Before the Court is Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. (Dkt. No. 1; Cr. Dkt. No. 80).[1] Petitioner argues that his attorney's failure to advocate on appeal for a minor-role adjustment under U.S.S.G. § 3B1.2 constituted ineffective assistance of counsel. (Cr. Dkt. Nos. 80 & 81). On April 22, 2019, Petitioner's Motion was referred to this Court by the District Judge for findings of fact and recommendations of law (Cr. Dkt. No. 82). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court submits the following Report and Recommendation and recommends that Petitioner's Motion to Vacate, Set Aside or Correct sentence (Dkt. No. 1, Cr. Dkt. No. 80) be **DENIED** and dismissed with prejudice.

### 1. Background

On September 28, 2017, a confidential source (CS) notified Drug Enforcement Administration (DEA) special agents by telephone that 300 bundles of marijuana weighing approximately 6,000 pounds were being stored at a residence on 3622 Kingston Lane in Laredo, Texas (Cr. Dkt. No. 55 at 5). The CS witnessed four unidentified individuals unloading bundles

---

[1] "Dkt. No." refers to Petitioner's civil case, and "Cr. Dkt. No." refers to Petitioner's criminal case.

from a vehicle; those bundles were then stored throughout the residence, and the CS and the four individuals were tasked with guarding them. (*Id.*).

That evening, DEA special agents surveilling the residence observed a white Ford Econoline van parked in the rear of the residence. (*Id.* at 6). At 10:08 p.m., the van departed the residence. Agents followed it to a Dollar General Store parking lot on Clark Boulevard. (*Id.*). An unidentified male individual got out of the van and was picked up by a small red pick-up truck. (*Id.*). At 10:18 p.m., the agents observed a Kia Soul drive into the same parking lot, and a male passenger—later identified as Petitioner's codefendant, Mr. Arturo Reyes—exited the vehicle and entered the white van on the driver's side. (*Id.*). The van and the Kia Soul traveled east in tandem before United Independent School District Police Department (UISD PD) officers in the area conducted a traffic stop on the van, at the agents' request, at the intersection of South Martin Avenue and Frees Street, at approximately 10:25 p.m. (*Id.*). Petitioner's codefendant fled on foot but was apprehended by UISD PD officers at approximately 10:28 p.m., transported to the DEA office in Laredo, and advised of his rights (*Id.*). 110 bundles of marijuana weighing approximately 1,217.5 kilograms were seized from the white van. (*Id.*).

Later that day, the CS informed DEA special agents that a pick-up truck and U-Haul style truck would be arriving at the residence on Kingston Lane to collect the remaining bundles the following morning. (*Id.* at 6–7). On September 29, 2017, at approximately 7:55 a.m., DEA special agents witnessed the U-Haul truck depart the residence. (*Id.* at 7). Assisting UISD PD officers stopped the vehicle at the intersection of Clark Boulevard and Bartlett Avenue and detained the driver, later identified as Petitioner. (*Id.*). Fifty-nine bundles of marijuana weighing approximately 658.5 kilograms of marijuana were seized from the truck. (*Id.*). Petitioner was transported to the DEA office in Laredo and advised of his rights. (*Id.*).

2

At 9:50 a.m., DEA special agents, UISD PD officers, United States Border Patrol agents, and Customs and Border Protections agents executed a federal search warrant at the residence at 3622 Kingston Lane, seizing 124 bundles of marijuana that weighed approximately 1,381.5 kilograms. (*Id.*). Agents also discovered one Savage Arms Stevens 12-gauge shotgun, seven shotgun shells, and one machete. (*Id.*).

**2.   Indictment, Guilty Plea and Sentencing**

Petitioner was indicted on one count of conspiracy to possess with intent to distribute more than 100 kilograms of marijuana—specifically, 658.5 kilograms—in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Cr. Dkt. No. 55 at 5).

On January 9, 2018, Petitioner pleaded guilty without entering into a plea agreement with the Government. (*Id.*). On May 15, 2018, the Court sentenced Petitioner to eighty-four months' imprisonment. (Minute Entry dated May 15, 2018).  On May 18, 2018, Petitioner appealed his judgment and sentence to the United States Court of Appeals for the Fifth Circuit. (Cr. Dkt. No. 62). On January 30, 2019, the Fifth Circuit dismissed his appeal, concluding that it presented no nonfrivolous issue for appellate review. (Cr. Dkt. No. 79).

On March 25, 2019, Petitioner timely filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (Cr. Dkt. No. 80). On April 22, 2019, Petitioner's Motion was referred to this Court by the District Judge for findings of fact and recommendations of law (Cr. Dkt. No. 82).

Petitioner and his codefendant were ultimately held accountable only for the quantity of marijuana found in the vehicles that each was driving. At sentencing, the District Court noted that "if the Government had charged it differently [by holding Petitioner responsible for the full extent of the drugs related to the conspiracy, weighing over 1000 kilograms] I would have had no choice

but to give you life in prison." (Cr. Dkt. No. 72 at 27). The Presentencing Report (PSR), adopted in full by the Court, had noted that no further information was available regarding Petitioner's knowledge or association with the residence on 3622 Kingston Lane (Cr. Dkt. No. 55 at 8).

Using the 2016 Sentencing Guidelines, the PSR recommended that Petitioner be assessed at a base offense level of twenty-six. (Cr. Dkt. No. 55 at 9). Petitioner's base level was then adjusted downwards by three levels in recognition of his written acceptance of responsibility. (*Id.* at 10). Concluding that Petitioner and his co-defendant were comparably culpable, the PSR did not recommend a minor-role adjustment. (*Id.* at 9). Petitioner's total offense level was therefore twenty-three. (*Id.* at 10).

In computing Petitioner's culpability under the Guidelines, the probation officer tallied eight criminal history points: six points for Petitioner's criminal convictions for possession with intent to distribute a quantity of less than fifty kilograms of marijuana (in 2004) and re-entry of a deported alien (2009), and two additional points because Petitioner was on supervised release at the time of the instant offense. (*Id.*). Petitioner was therefore placed in criminal history category IV. (*Id.*). Petitioner's sentence of eighty-four months fell within the relevant Guidelines range of seventy to eighty-seven months. (*Id.* at 18). Under 21 U.S.C. § 841(b)(1)(B), conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, a Schedule 1 controlled substance, carries a minimum term of imprisonment of five years, with a maximum term of forty years. (*Id.*).

Petitioner argues that, had counsel raised the issue on appeal, he would have been eligible for a two-level minor-role adjustment under U.S.S.G. § 3B1.2, which would have brought him within a Guidelines range of fifty-seven to seventy-one months. (Cr. Dkt. No. 81 at 3).

3. **Standard of Review**

The Court has examined Petitioner's Motion in accordance with Rule 4 of the Rules Governing Section 2255 Proceedings.[2] The court must dismiss it "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS. Additionally, a § 2255 motion can be dismissed without an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

4. **Legal Standard**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at all "critical stages" of criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Under the two-pronged standard outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a movant will only be able to raise a valid claim of ineffective assistance of counsel when (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted from that deficiency. *Id.* at 687.

An attorney's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *Id.* at 688. In reviewing counsel's performance, courts must "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's failure to raise meritless arguments cannot form the basis of an ineffective assistance of counsel claim.

---

[2] Rule 4 states: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

*United States v. Webster*, 392 F.3d 787, 796 n. 18 (5th Cir. 2004); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.")

A petitioner establishes prejudice where he shows a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694. When either prong of the *Strickland* test is not satisfied, it will ordinarily be unnecessary to analyze the other prong. *See Strickland*, 466 U.S. at 700.

While claims raised by pro se litigants must be liberally construed to ensure that their allegations are not unfairly dismissed because of their unfamiliarity with the law, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1990)).

## 5.  Discussion

U.S.S.G. § 3B1.2(b) provides for two-level decreases to the offense level of a defendant who was a minor participant in a criminal activity. Petitioner argues that counsel was ineffective by failing to advocate, on appeal, for a minor-role adjustment under this subsection. (Cr. Dkt. No. 81, at 3).

Regardless of whether counsel's failure to raise the issue of a minor-role reduction for Petitioner on appeal was a conscious decision, his performance did not lead to an unfair and unreliable conviction and sentence. *See United States v. Dovalina*, 262 F.3d 472, 474-475 (5th Cir. 2001). Indeed, at sentencing, the Court specifically noted: "I have considered all the [18 U.S.C. §]

3553 factors and everything before me. I think your case is one where you've been very lucky that you really have had very good representation. I think your lawyers negotiated the Superseding Criminal Information because, otherwise…it would be a minimum 120 [months]…in addition to whatever you were looking at on the revocation." (Cr. Dkt. No. 72 at 34).

Even assuming, however, for the sake of argument, that counsel's failure to advocate for the mitigating adjustment was simply an oversight and that this oversight constituted deficient performance, Petitioner fails to show prejudice. He cannot show that his sentence would have been different had those arguments been raised. "A downward adjustment…is generally appropriate only where a defendant was '*substantially less culpable* than the average participant.'" *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989) (quoting U.S.S.G. § 3B1.2, cmt. background). Petitioner bears the burden of showing, by a preponderance of the evidence, both the culpability of the average participant in the criminal enterprise, and that he did "enough less [than the average]….that he at best was peripheral to the advancement of the illicit activity." *United States v. Castro*, 843 F.3d 608, 613–14 (5th Cir. 2016) (citations omitted).

In this context, "average participant" means "only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's culpability is determined only by reference to his or her co-participants in the case at hand." *United States v. Torres-Hernandez*, 843 F.3d 203, 208–209 (5th Cir. 2016).[3] According to § 3B1.1, a "participant" is "a person who is criminally responsible for the commission of the offense." U.S. SENTENCING

---

[3]   The phrase "average participant" has received different interpretations in different jurisdictions: the First and Second circuits, for instance, would compare a defendant to a typical or hypothetical offender who commits similar crimes, while the Seventh and Ninth circuits would limit the scope of comparison only to those participants who actually participated in the criminal enterprise at issue in the defendant's case. U.S.S.G. PRIMER: AGGRAVATING AND MITIGATING ROLE ADJUSTMENTS: § 3B1.1 & 3B1.2 18-19 (2019). In 2015, the United States Sentencing Commission amended the Commentary to § 3B1.2 to resolve this circuit split and came down in favor of the latter interpretation, specifying that the defendant is to be compared with other participants in the "criminal activity." *Id.* at 19. Thus, "the relative culpability of the 'average participant' is measured only in comparison to those persons who actually participated in the criminal activity, rather than against "typical" offenders who commit similar crimes." *Id.*

GUIDELINES MANUAL § 3B1.1 cmt. n.1 (2018). Courts uniformly identify as participants those who were "aware of the criminal objective, and…knowingly offered their assistance." U.S. SENTENCING COMM'N, U.S.S.G. PRIMER: AGGRAVATING AND MITIGATING ROLE ADJUSTMENTS: § 3B1.1 & § 3B1.2 4 (2019) [hereinafter PRIMER]; *see also United States v. Bouette*, 13 F.3d 855, 860 (concluding that individuals can be participants without being charged or convicted with a defendant). The "definition of a 'participant' is broader than the scope of conspiratorial liability." PRIMER at 4; *see also United States v. Acevedo-Lopez*, 873 F.3d 330, 336–37 (1st Cir. 2017) ("[T]o be considered a participant, it is only necessary that an individual gives knowing aid in some aspect of the criminal activity."); *United States v. Alfonzo-Reyes*, 592 F.3d 280 (1st Cir. 2010) (holding that a defendant's wife was a participant in a fraud scheme where she knowingly falsified government loan applications at defendant's direction).

In rejecting a mitigating-role adjustment for Petitioner, the PSR concluded that "neither defendant is substantially less culpable than the other; rather, both defendants represent the average participation in the instant offense." (Cr. Dkt. No. 55. at 9). This conclusion rests on the notion that Petitioner and his co-defendant, as narcotic transporters, performed identical roles: each individually operated vehicles containing substantial quantities of marijuana obtained from the same premises. (*Id.*). To the extent that there are any notable distinctions between them, it is in the quantity of narcotics that each transported and for which each was held responsible: 658.5 kilograms of marijuana were found in Petitioner's vehicle, compared with the 1,217.5 kilograms transported by his co-defendant. (*Id.*).

Yet while this fact may indeed militate in favor of a finding that Petitioner is in some degree less culpable than at least one participant, it does not necessarily follow that he is *substantially* less culpable, to the extent that he is "peripheral" to the advancement of the criminal activity. *Compare*

*United States v. Ramirez-Esparza,* 703 F. App'x 276 (5th Cir. 2017) (finding a defendant more culpable than the average participant for transporting a greater quantity of marijuana than six other couriers), *with United States v. Collins*, 205 Fed. App'x 196 (5th Cir. 2006) (rejecting minor-role reduction for defendant found in possession of smaller quantity of narcotics than other co-conspirators when overall role played by defendant was not peripheral to advancement of conspiracy); *United States v. Atanda*, 60 F.3d 196, 199 (5th Cir. 1995) ("§ 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal.").

In limiting the scope of comparison only to Petitioner's co-defendant, the other courier in this criminal enterprise, the PSR does not take into account the other participants in the criminal activity with whom Petitioner might be compared, as the Guidelines require. *See* Primer, at 19. Petitioner claims that he would have qualified for the minor-role adjustment on the basis that he was merely carrying out duties directed by others, and did not exercise decision-making power over other participants in the criminal activity.[4] The 2015 amendment to the Guidelines would appear to help Petitioner's case: in its updated Commentary to § 3B1.2, the Commission stated that "[a] defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable…only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." This revision—striking the phrase "not precluded from consideration" and replacing it with "may receive"—was intended to address any "unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." Primer, at 24

---

[4] Petitioner refers variously to his "co-defendants," "co-conspirators," and "other participants" in his Memorandum in Support of § 2255 Motion. As noted above, however, the proper comparison under § 3B1.2 is with "other participants."

n.109; *see also* U.S.S.G. App. C, amendment 794. The question, therefore, is whether Petitioner's circumstances represent an otherwise appropriate foundation for a minor-role adjustment. *See id.*

Petitioner does not make the requisite showing, however, either of the culpability of the average participant or of his peripheral role. *See Castro*, 843 F.3d at 613-14. He does not, for instance, clarify the nature and extent of the larger operation in which he claims not to be "deeply involved," nor does he show the culpability of the average participant in the criminal enterprise beyond self-serving and conclusory claims regarding his own "minor participation" (Cr. Dkt. No. 81 at 3). Even taking at face value his claim that his culpability is less than that of the average participant, Petitioner's culpability would still need to be *substantially* less than other participants' in the criminal enterprise for his minor-role adjustment claim to carry force. *See Buenrostro*, 868 F.2d at 138. As the Court has noted, according to the Fifth Circuit standard, Petitioner would have had to prove that he did "enough less…that he at best was *peripheral* to the advancement of the illicit activity." *Castro*, 843 F.3d at 613–14 (citations omitted) (emphasis added).

Yet courts in the Fifth Circuit have uniformly rejected the presumption that couriers fall into this peripheral category by default, or that they are automatically eligible for a reduction of their offense levels under § 3B1.2. *United States v. Zuniga*, 585 F. App'x 871, 872 (5th Cir. 2014). Rather, "couriers are an indispensable part of drug dealing networks….A courier who willingly undertakes illegal transit…is especially valuable to a criminal organization.'" *Buenrostro*, 868 F.2d at 138; *see also United States v. Guerrero*, No. 14-40074, 2016 WL 4375012, at *1 (5th Cir. Aug. 16, 2016) ("A district court does not commit clear error…if it fails to award a mitigating role adjustment for a drug courier."). That the Sentencing Commission chose not to include courier status as a specific offense characteristic in § 2D1.1 lends further support to this notion. *See Buenrostro*, 868 F.2d at 138.

While a drug courier is not automatically eligible for minor-role reduction, the Commission has explained that "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." § 3B1.2 cmt. n.3(C). In its revisions to the commentary, the Commission instead set out a non-exhaustive list of factors for courts to consider when determining whether to apply a downward adjustment: (1) the degree to which the defendant understood the scope and structure of the criminal activity, (2) the degree to which the defendant participated in planning or organizing the criminal activity, (3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority, (4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts, and (5) the degree to which the defendant stood to benefit from the criminal activity. *Id.* Thus it would be appropriate to consider an adjustment for a defendant, with no proprietary interest in the criminal activity, who is simply being paid to perform certain tasks. *Id.* However, courts need not expressly weigh each of these factors on the record: rather, "[t]he commentary and Amendment 794 instead confirm that there are many factors that a sentencing court should consider, and how those factors are weighed remains within the sentencing court's discretion." *Torres-Hernandez*, 843 F.3d at 209–10.

Of the factors listed above, Petitioner's argument in favor of a minor-role adjustment implicates the first three: there is no evidence that he understood the scope and structure of the criminal activity; nor is there anything in the record regarding his participation in planning or organizing the criminal activity, or the degree to which he exercised decision-making authority or influenced the exercise of that authority. *See id.*; *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017). Petitioner appears not to have had a proprietary interest in the enterprise.

Weighing against an adjustment, however, is the nature and extent of Petitioner's participation in the criminal activity and the acts he performed. With his co-defendant, he illegally transported marijuana within the United States as part of the distribution chain. *See Torres-Hernandez*, 843 F.3d at 209. Petitioner also stood to benefit financially from the criminal activity. (Cr. Dkt. No. 55 at 9). In sum, in the necessarily fact-intensive exercise of determining whether to apply the minor-role adjustment under §3B1.2, the totality of the circumstances do not clearly point to Petitioner's eligibility for such a reduction.

Contrary to Petitioner's claims, therefore, it is not reasonably probable that Petitioner would have benefited from a minor-role adjustment, had counsel in fact appealed the district court's decision not to apply a two-level reduction to Petitioner's sentence. Even if the universe of participants is expanded beyond the Petitioner and his codefendant to include the full range of participants in the criminal enterprise at issue in this case—a more generous standard than that invoked in the PSR—Petitioner would still not be able to show prejudice.

**6.  Recommendation**

For the foregoing reasons, the Court **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence. (Cr. Dkt. No. 80).

**7.  Notice of Right to Object**

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the

findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

**SIGNED** on June 14, 2019.

JOHN A. KAZEN
United States Magistrate Judge